# IN THE COURT OF APPEALS OF IOWA

No. 18-1212
Filed December 19, 2018

**IN THE INTEREST OF M.B.,**
**Minor Child,**

**B.B., Mother,**
　　Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Jacob L. Mason of JL Mason Law, PLLC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Juvenile Public Defender's Office, Des Moines, guardian ad litem for minor child.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A mother appeals the termination of her parental rights to her child, born in 2012. The child first came to the attention of the Iowa Department of Human Services (DHS) in July 2014 upon reports the mother was using controlled substances while caring for the child. DHS initially removed the child. The mother was successful in treatment, the child was returned to the mother's care, and the case was closed in February 2016.[1] In February 2017, the child again came to the attention of DHS upon reports of the mother and her live-in paramour using controlled substances while caring for the child. During its investigation, DHS discovered the paramour sexually abused the child. The child was removed from the mother's care and initially placed with the maternal grandmother.[2] However, the child was removed after the grandmother allowed the mother unsupervised and unauthorized contact with the child, which resulted in contact with the mother's paramour. The child was subsequently placed and remains in foster care.

During the pendency of this case, DHS explored a maternal great-aunt as a potential placement for the child, but it determined she was not suitable for long-term placement due to concerns for her ability to set boundaries with the maternal grandmother and the maternal grandmother's own boundary issues with the mother. Further, the maternal great-aunt failed to immediately report a sexual incident between the child and a relative of the foster family. The mother continued to struggle with substance abuse and, throughout the pendency of this case,

---

[1] The child's father's parental rights were terminated during the course of these prior proceedings.
[2] We note that the maternal grandmother passed away in July 2018.

including just prior to the termination hearing, continued to associate with the paramour that abused the child. In June 2018, the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2018).

We review termination proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). On appeal, the mother does not contest the statutory grounds upon which her rights were terminated. Therefore we do not need to address this step in the three-step analysis for termination of parental rights. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Instead, the mother maintains termination is not in the child's best interests and statutory exceptions should be applied to preclude termination. The mother suggests the best interests of the child would be to establish a guardianship with the maternal great-aunt as guardian due to the child's bond with herself and the great-aunt along with other members of the mother's family.

To determine whether termination is in the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Further, a guardianship, rather than termination, would not promote stability in the child's life. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4

(Iowa Ct. App. Feb. 9, 2011) ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody.")

We recognize that DHS considered and ultimately determined the maternal great-aunt was not appropriate for long-term placement for the child due to concerns about her inability to provide protective boundaries and her failure to immediately report sexual abuse. The record also reflects the maternal great-aunt is in support of termination of the mother's parental rights. Though the maternal great-aunt may be willing to care for the child, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). Even if a guardianship with the maternal great-aunt was established, the mother has failed to meet her burden to show that such a guardianship should serve as an alternative to termination. On our de novo review, we conclude a guardianship is not appropriate under the facts of this case and termination is in the best interests of the child.

The mother also contends the statutory exceptions to termination contained in Iowa Code section 232.116(3)(a) and (c) should be applied. The "factors weighing against termination in section 232.116(3) are permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *A.M.*, 843 N.W.2d at 113). "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *A.M.*, 843 N.W.2d at

113). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination." *A.S.*, 906 N.W.2d at 476.

The juvenile court declined to apply any exception to termination, finding the "mother has not maintained consistent contact with the child and has not meaningfully engaged in services and her continued poor decisions pose a real danger to this child." Section 232.116(3)(a) permits the court to forgo termination if "[a] relative has legal custody of the child." We find the exception under paragraph (3)(a) does not apply—at the time of the termination hearing, the child was not in the legal custody of a relative, but in the custody of DHS and placed in a foster home. Section 232.116(3)(c) permits the court to forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." A strong bond between parent and child is "not an overriding consideration, but merely a factor to consider." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). Further, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709. On our review, we find that though there is a bond between mother and child, that bond does not outweigh the child's need for stability and permanency. The mother's continued use of controlled substances and association with the man who abused her child places the child at risk of harm. We conclude the closeness of the parent-child relationship does not preclude termination in this case.

**AFFIRMED.**